IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 20-cv-00391-PAB

DOUGLAS C. LARUE,

      Plaintiff,

v.

ANDREW M. SAUL, Commissioner of Social Security,

      Defendant.

_____

**ORDER**
_____

This matter comes before the Court on the Complaint [Docket 1] filed by plaintiff Douglas C. LaRue on February 14, 2020. Plaintiff seeks review of the final decision of the defendant (the "Commissioner") denying his claim for disability insurance benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401–33. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g).[1]

## I. BACKGROUND

On May 8, 2008, plaintiff applied for social security benefits under Title II of the Act. R. at 15. Plaintiff alleged a disability onset date of April 30, 2008. *Id.* After his claims were initially denied on August 14, 2008, plaintiff requested a hearing before an administrative law judge ("ALJ"). *Id.* On July 23, 2010, the ALJ issued a decision denying plaintiff's claim. R. at 12. Plaintiff appealed to this Court, which reversed and remanded the ALJ's decision. R. at 405–20; *see* Case No. 12-cv-00636-PAB. On

---

[1] The Court has determined that it can resolve the issues presented in this matter without the need for oral argument.

remand, the ALJ again denied plaintiff's claims. R. at 345–359. Plaintiff again appealed to this Court, which again reversed and remanded the ALJ's decision. R. at 727–37; Case No. 15-cv-02585-PAB.

On remand, a new ALJ issued another unfavorable decision. R. at 612–56. The ALJ found that plaintiff had not engaged in substantial gainful activity from the alleged onset date through the date he was last insured, December 31, 2013, and had the following severe impairments: multiple sclerosis ("MS"), neuropathy, and cough syncope. R. at 618. The ALJ concluded, however, that plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. §§ 404.1520(d), 404.1525, or 404.1526. R. at 630–31. The ALJ additionally determined that plaintiff's depression is non-severe. R. at 629–30. Ultimately, the ALJ concluded that plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) except that plaintiff

> can occasionally lift/carry 20 pounds; frequently lift/carry 20 pounds; stand and/or walk for 2 hours of an 8-hour workday; sit for six hours of an 8-hour workday; never climb ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch, crawl, or climb ramps and stairs; can have no more than occasional exposure to extreme heat or extreme cold; and can have no exposure to hazards, including unprotected heights, commercial driving, or operating heavy machinery.

R. at 632. The ALJ determined that plaintiff could not perform past relevant work as a floor installer or site supervisor generally or actually. R. at 654. However, the ALJ determined that there were jobs that existed in significant numbers in the national economy that plaintiff could have performed, *id.*, and that plaintiff was not under a disability, as defined in the Act, at any time between the onset date of April 30, 2008

and the date of last insured, December 31, 2013. R. at 655.

On December 11, 2019, the Appeals Council denied plaintiff's request for review. R. at 605. Accordingly, the most recent ALJ decision is the final decision of the Commissioner.

## II. STANDARD OF REVIEW

Review of the Commissioner's finding that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *See Angel v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003). The district court may not reverse an ALJ simply because the court may have reached a different result based on the record; the question instead is whether there is substantial evidence showing that the ALJ was justified in her decision. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence is more than a mere scintilla, and means only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation and quotation omitted). "The threshold for such evidentiary sufficiency is not high." *Id.* Nevertheless, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The district court will not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007). Nevertheless, "if the ALJ failed to apply the correct legal test,

there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

## III.  THE FIVE-STEP EVALUATION PROCESS

To qualify for disability benefits, a claimant must have a medically determinable physical or mental impairment expected to result in death or last for a continuous period of twelve months that prevents the claimant from performing any substantial gainful work that exists in the national economy.  42 U.S.C. §§ 423(d)(1)–(2).  Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).  The Commissioner has established a five-step sequential evaluation process to determine whether a claimant is disabled.  20 C.F.R. § 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).  The steps of the evaluation are:

> (1) whether the claimant is currently working; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets an impairment listed in appendix 1 of the relevant regulation; (4) whether the impairment precludes the claimant from doing his past relevant work; and (5) whether the impairment precludes the claimant from doing any work.

*Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (citing 20 C.F.R. §§ 404.1520(b)–(f)).  A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis.  *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

The claimant has the initial burden of establishing a case of disability. However, "[i]f the claimant is not considered disabled at step three, but has satisfied her burden of establishing a prima facie case of disability under steps one, two, and four, the burden shifts to the Commissioner to show the claimant has the residual functional capacity (RFC) to perform other work in the national economy in view of her age, education, and work experience." *See Fischer-Ross v. Barnhart,* 431 F.3d 729, 731 (10th Cir. 2005); *see also Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987). While the claimant has the initial burden of proving a disability, "the ALJ has a basic duty of inquiry, to inform himself about facts relevant to his decision and to learn the claimant's own version of those facts." *Hill v. Sullivan,* 924 F.2d 972, 974 (10th Cir. 1991).

## IV.  DISCUSSION

Plaintiff raises two objections to the ALJ's order: (1) the ALJ failed to properly assess plaintiff's testimony about the effects of his fatigue; and (2) the ALJ did not have valid reasons for rejecting the medical opinions and lay witness statements regarding the effects of fatigue. Docket No. 14 at 3–18.

### A.  Plaintiff's Subjective Allegations

The Court must affirm the ALJ's conclusion regarding whether plaintiff's subjective allegations comport with the evidence in the record so long as there is substantial evidence for the ALJ's conclusion. *Ellison*, 929 F.2d at 536. "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty*, 515 F.3d at 1070. However, evidence is not substantial "if it is overwhelmed by other evidence in the

record or constitutes mere conclusion." *Musgrave*, 996 F.2d at 1374.

On the last appeal, the Court stated that the record "uniformly shows that plaintiff suffers from fatigue." R. at 734 (discussing statements of physicians concluding that plaintiff's fatigue, caused by his MS, requires unscheduled breaks, is unpredictable, and would prevent him from functioning at a job). The Court also noted that the previous ALJ improperly substituted her own evaluation of the medical evidence for the medical judgment of the doctors of record when she determined, without reference to medical evidence or discussion of the opinions of doctors who found that plaintiff's fatigue limited his activities, that plaintiff's statements about fatigue are not substantiated by the medical evidence. R. at 735. The Court then concluded that the ALJ had "failed to rely on substantial evidence that plaintiff instead has 'mild, ongoing fatigue' or even that such a level of fatigue would not be enough to prevent plaintiff from working in combination with his other limitations." R. at 737. The Court remanded for further proceedings consistent with its opinion. *Id.*

In the most recent decision, the ALJ determined that fatigue "does not uniformly appear in the record, as there is no mention that the claimant appears fatigued in any way" other than in one instance when plaintiff appeared down after being asked how his hands became callused and soiled.[2] R. at 637. The ALJ reached this conclusion after determining that "there are no objective mentions that the claimant appears tired or fatigued, having difficulty staying awake, chronically ill, or otherwise that would

---

[2] The ALJ noted that, despite plaintiff's concerns about being around power tools and hazardous machinery, plaintiff reportedly continued to climb ladders, do yard work, and use a band saw, as evidenced by plaintiff's callused and soiled hands. R. at 640. The ALJ found this undercut plaintiff's subjective allegations. *Id.*

corroborate the subjective allegations related to his fatigue." *Id.* Nevertheless, the ALJ acknowledged that "[t]he strongest factor in support of the claimant's allegations [is] the consistency in which he reports his subjective symptoms, which includes his reports of fatigue." R. at 638. The ALJ then concluded that "other factors fail to support the extent of those limitations." *Id.* The ALJ drew his conclusion notwithstanding plaintiff's "fatigue questionnaire," R. at 633, as well as statements of plaintiff's physicians whom the Court cited in its last order. R. at 734. The ALJ also noted that plaintiff testified at a previous hearing that he had worsening balance, fatigue, and cognitive problems and that he needed to lie down for five or six hours during the day. R. at 633–34. While the ALJ noted that "there is no doubt that the claimant's records consistently document subjective complaints of fatigue," R. at 639, the ALJ ultimately concluded that plaintiff's medically determinable impairments "could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence of record." R. at 634.

Plaintiff raises two objections to this determination. First, plaintiff argues that the ALJ "improperly insisted on objective findings to verify fatigue," even though "[f]atigue is one of the most common and limiting symptoms of some neurological disorders, such as multiple sclerosis," Docket No. 14 at 16 (quoting SSA Listings § 11.00(T)), and "fatigue is difficult to assess because, like other symptoms, there are no objective tests to measure it." *Id.* (quoting Program Operations Manual System ("POMS") DI 24580.015(B)). Plaintiff also notes that the Tenth Circuit has held that no disease is per se excluded from coverage because it cannot be conclusively diagnosed in a laboratory

setting.  *Id.* (citing *Sisco v. Dep't of Health & Human Servs.*, 10 F.3d 739, 744 (10th Cir. 1993)).  Therefore, plaintiff argues, when the ALJ determined that "there is little to no objective findings to support any . . . manifestations of [plaintiff's] fatigue," R. at 640, the ALJ applied the wrong legal test because fatigue must be determined by "clinical and laboratory data and *other evidence*."  Docket No. 14 at 17 (quoting POMS DI 24580.015(B) (emphasis added)).[3]

Second, because objective tests cannot show fatigue, but rather fatigue is shown by clinical and laboratory data and other evidence, plaintiff argues that, since he has shown evidence of fatigue, the inquiry should be on the intensity of the fatigue and whether it affects his ability to function.  *Id.*  Despite Dr. Bjork's determination that plaintiff suffers from lassitude fatigue, R. at 247–49, and the ALJ's conclusion that plaintiff suffers from an impairment sufficient enough to limit his standing and walking, R. at 632, the ALJ determined that plaintiff's impairment was not severe enough to require plaintiff to take periodic breaks, since his callused and soiled hands contradicted needing to take breaks.  R. at 640.  Plaintiff believes this goes against the Court's statement in its previous order that yard work and wood work could be done with periodic breaks, as plaintiff states that he only engages in these activities for an

---

[3] In the alternative, plaintiff argues that his allegations of fatigue are supported by objective evidence because his neurologist, Dr. Randall Bjork, determined that plaintiff suffers from "lassitude fatigue," which is a "kind of fatigue complaint typical of [MS] patients."  *Id.* at 17 (quoting R. at 249).  It was error for the ALJ to discount this determination, plaintiff argues, simply because Dr. Bjork could not opine on whether plaintiff was a typical MS patient, since every MS patient presents with unique responses to therapy and treatment.  *Id.* (citing R. at 649).  Rather, when Dr. Bjork determined that plaintiff suffers from lassitude fatigue, he relied on objective medical findings, including an MRI of plaintiff's brain and tests of plaintiff's cerebral fluid.  *Id.* at 18 (citing R. at 247–48).

hour or two before needing to rest. Docket No. 14 at 19 (citing R. at 147).

The Court agrees with plaintiff that it was improper for the ALJ to discount plaintiff's consistent complaints of fatigue because of the lack of objective evidence of fatigue. Normal exam findings may not show fatigue, given that there are no objective tests to determine it. POMS DI 24580.015(B). Thus, the ALJ should not have insisted on objective findings. *See, e.g.*, R. at 636 ("the most significant objective findings are those findings that are missing throughout the record"); R. at 637 ("there are no objective mentions that [plaintiff] appears tired or fatigued"). Moreover, objective findings are not sufficient, on their own, to discredit a claimant's complaints of chronic fatigue. *See Clark v. Barnhart*, 64 F. App'x 688, 691–92 (10th Cir. 2003) (unpublished). The ALJ was also incorrect in concluding that there were no contemporaneous observations of fatigue. As the Court explained in its last order, plaintiff's complaints of fatigue are "uniform." R. at 734.

Nevertheless, the ALJ also determined that "there is no doubt that claimant's records consistently document subjective complaints of fatigue." R. at 639. This means that the ALJ considered these complaints, but discounted them due to credibility issues. Plaintiff argues that clinical and laboratory data and other evidence support plaintiff's subjective complaints of fatigue. Docket No. 14 at 17. However, as plaintiff correctly states, the inquiry is on the intensity of the fatigue and whether it affects his ability to function. In order to do this, the Court must review the ALJ's determination of plaintiff's credibility.

The Court's review of the ALJ's credibility determinations is guided by two principles. First, "[c]redibility determinations are peculiarly the province of the finder of

9

fact, and we will not upset such determinations when supported by substantial evidence." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995). Second, "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Id*. (alterations omitted). In assessing a claimant's credibility, the ALJ must evaluate both whether the claimant has a medically determinable impairment that could reasonably be expected to produce the claimed symptoms and, if so, whether the claimed intensity, persistence, and limiting effects of the symptoms are credible. SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017).[4] The ALJ makes this assessment by considering the following factors:

　　1. The individual's daily activities;

　　2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;

　　3. Factors that precipitate and aggravate the symptoms;

　　4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

　　5. Treatment, other than medication, the individual receives or has

---

[4] At the time plaintiff filed for benefits, SSR 96-7p governed the Commissioner's analysis of a claimant's subjective complaints. *See* SSR 96-7p, 1996 WL 374186 (July 2, 1996). On March 26, 2016, SSR 16-3p superseded SSR 96-7p and eliminated use of the term "credibility" and provided new guidance for evaluating the intensity, persistence, and limiting effects of a claimant's symptoms. *Makeen v. Berryhill*, No. 17-cv-02663-CMA, 2018 WL 3633560, at *8 (D. Colo. July 31, 2018). ALJs are to apply SSR 16-3p when making determinations and decisions on or after March 28, 2016. SSR 16-3p, 2017 WL 5180304, at *13 n.27. The ALJ issued his decision after that date, so SSR 16-3p governed the ALJ's analysis of plaintiff's subjective complaints. *See Makeen*, 2018 WL 3633560, at *8 (stating that ALJ's subjective complaint evaluation was governed by ruling in place at time of decision).

> received for relief of pain or other symptoms;
>
> 6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
>
> 7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

*Id.* at *7–8; *see also* 20 C.F.R. § 404.1529(c)(4) ("We will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence."). The ALJ must set forth "the specific evidence he relies on in evaluating the claimant's credibility," but is not required to undergo a "formalistic factor-by-factor recitation of the evidence." *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

The Court finds that the ALJ's determination of plaintiff's credibility regarding his subjective allegations of fatigue is supported by substantial evidence in the record. This evidence includes consistently normal exam findings, such as normal strength, muscle tone, coordination, gait, cognition, and appearance. R. at 214–19, 229–31, 283–99, 305–06, 312–20, 539–78. While normal exam findings and objective evidence may not reflect fatigue, such evidence may be used in assessing credibility. *See* 20 C.F.R. § 404.1529(c)(2). For instance, a claimant who alleges that he suffered from chronic, debilitating fatigue may be less credible if he presents at an examination with normal muscle tone and strength.

Plaintiff's daily activities also support the ALJ's determination of plaintiff's credibility. These activities including helping with chores, working in the yard, fishing on

occasion, continuing to do projects that require climbing ladders or using a saw, and traveling to his son's wedding. R. at 307–08, 315–20, 534. Consideration of a claimant's activities of daily living is proper when evaluating a claimant's alleged symptoms. 20 C.F.R. § 404.1529(c)(3)(i). "While 'sporadic performance' of activities, like performing a few household tasks, 'does not establish that a person is capable of engaging in substantial gainful activity,' the Tenth Circuit has consistently held that an ALJ may reasonably consider such activities when they are inconsistent with a claimant's reported limitations." *Wagner v. Berryhill*, 2017 WL 3981147, at *9 (W.D. Okla. Sept. 11, 2017) (quoting *Frey v. Bowen*, 816 F.2d 508, 516-17 (10th Cir. 1987)) (internal citation omitted).

Moreover, the ALJ considered plaintiff's consistent treatment and the fact that he has responded moderately well to his medications. R. at 638–39. The ALJ determined that his medications have been relatively consistent through the record, "in spite of his alleged worsening or ongoing symptoms." R. at 638. While plaintiff has been unable to control his fatigue completely, he found some success with Provigil and Ritalin. R. at 639, R. at 539. The Court also notes that the RFC is a determination of what a complainant can do *despite* impairments and limitations. 20 C.F.R. § 404.1545(a)(1). Thus, a claimant may not necessarily be entitled to benefits even where the symptoms or effects of severe disabilities are not completely controlled.

Finally, and discussed more fully below, the ALJ considered Dr. Bjork's observation that plaintiff's performance in examinations was "inconsistent" and that he

could not reconcile[5] plaintiff's callused and dirty hands with not being able to work.  R. at 307.  Therefore, the Court will not upset the ALJ's credibility determination because, as mentioned previously, credibility determinations are the province of the fact-finder and, when such determination are supported by substantial evidence, they will be affirmed.  *See Kepler*, 68 F.3d at 691.

### B.  Medical Opinions and Lay Witness Statements

#### *1.  Medical Opinions*

The ALJ must give consideration to all of the medical opinions in the record. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) (citing 20 C.F.R. §§ 404.1527(c), 416.927(c)).  The ALJ must also explain the weight he assigns to such opinions.  *Id.* (citations omitted).  As relevant to this appeal, the ALJ methodically reviewed the opinions of Dr. Ian Happer, the state agency medical consultant, whose opinion the ALJ gave significant weight; Dr. Bjork, one of plaintiff's treating neurologists, whose opinions the ALJ gave various weights; and Dr. Laurence Adams, another of plaintiff's treating neurologists, whose opinions the ALJ gave minimal weight.  R. at 641–52.

#### a.  Dr. Happer

The ALJ gave Dr. Happer's opinion significant weight.  R. at 642, 643.  Dr. Happer performed a physical RFC assessment and opined that plaintiff could, among

---

[5] Dr. Bjork stated that plaintiff "says he can't work, but his hands are calloused [sic] and soiled.  He wouldn't share with me how 'that' continues to be the case."  R. at 307.  While dirty, callused hands are not necessarily inconsistent with intermittent yard work or chores, as the Court noted in its last order, the ALJ could properly consider plaintiff's refusal to answer Dr. Bjork's question to him as bearing adversely on plaintiff's credibility on the subject of fatigue.

13

other things, "stand and/or walk 2–3 hours in an 8-hour workday; sit for 6 hours of an 8-hour workday." R. at 641. The ALJ noted that Dr. Happer, though a non-examining and non-treating source, is "uniquely trained to evaluate medical records and formulate medical source statements utilizing our rules and regulations." R. at 642. The ALJ also noted that Dr. Happer's opinions are consistent with the majority of the treating sources. *Id.* However, the ALJ noted that Dr. Happer "does not fully account for the limitations caused by [plaintiff's] fatigue." *Id.* Plaintiff argues that the ALJ should not have adopted Dr. Happer's "assessment of the effects of fatigue." Docket No. 14 at 21. The ALJ, however, did not adopt Dr. Happer's assessment of plaintiff's fatigue. Rather, the ALJ discounted that opinion of Dr. Happer. R. at 642. The Court finds that the ALJ gave sufficient reasons – familiarity with medical source statements, consistency with other opinions, and yet insufficient attention to plaintiff's fatigue – for affording Dr. Happer's opinion significant weight rather than great weight.

### b.  Treating Physicians

The opinion of a treating physician is generally entitled to greater weight than that of a non-treating physician because of the unique perspective derived from a treating relationship.[6] 20 C.F.R. § 404.1527(c)(2).

"[C]ase law, the applicable regulations, and the Commissioner's pertinent Social Security Ruling (SSR) all make clear that in evaluating the medical opinions of a

---

[6] In 2017, the rules were changed to no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)." 20 C.F.R. § 404.1520c(a). Because plaintiff's claim was filed before March 27, 2017, the former regulations apply. *See id.* § 404.1527(c)(2) ("Generally, we give more weight to medical opinions from . . . treating sources.").

claimant's treating physician, the ALJ must complete a sequential two-step inquiry, each step of which is analytically distinct." *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011). In the first step, the ALJ must consider whether the treating physician's opinion is entitled to controlling weight. If the treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [the ALJ] will give it controlling weight." 20 C.F.R. § 404.1527(c)(2); *see also* SSR 96-2p, 1996 WL 374188, *1 (July 2, 1996).

If the opinion is not given controlling weight, the ALJ will proceed to the second step of the inquiry. In the second step, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. [§§] 404.1527 and 416.927. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." SSR 96-2p, 1996 WL 374188, *4. The factors that must be applied in determining the proper weight to give an opinion are:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004) (quoting *Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003)); *see also* 20 C.F.R. § 404.1527(c). "[A]n ALJ must give good reasons for the weight assigned to a treating physician's

opinion, that are sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reason for that weight." *Langley*, 373 F.3d at 1119 (internal quotation marks and alterations omitted).

The ALJ gave varying weight to the different opinions of Dr. Bjork. R. at 646–50. The ALJ noted that Dr. Bjork has not demonstrated experience in completing medical source statements or providing functional analyses. R. at 646. The ALJ nevertheless gave significant weight to Dr. Bjork's opinion that plaintiff should not be working with manual labor tools or be in the manual workforce because, although Dr. Bjork had only examined plaintiff a single time two years before rendering this opinion, Dr. Bjork had supervised the physician assistant's treatment of plaintiff and had reviewed her treatment notes throughout. *Id.* This opinion is also consistent with the bulk of the evidence. *Id.* The ALJ also gave significant weight, for the same reasons, to the opinion that plaintiff could not return to being a floor installer. *Id.* However, the ALJ gave little weight to other opinions of Dr. Bjork, including that returning to work would be "problematical at best," because these opinions were based exclusively on plaintiff's subjective allegations. R. at 647. The ALJ afforded minimal weight to Dr. Bjork's opinions that plaintiff suffers from debilitating fatigue, including lassitude fatigue, and regarding plaintiff's functional capacity because these opinions and determinations lack support in the record and in Dr. Bjork's own records over the years, are based solely on plaintiff's subjective allegations, and are merely check-box opinions. R. at 647–48.

Plaintiff objects to the ALJ's determination to afford minimal weight to Dr. Bjork's opinions regarding plaintiff's fatigue and capacity yet provides little authority on which

his objections are based.  *See* Docket No. 14 at 23–24.  The Court, however, cannot re-weigh the evidence.  *See Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) ("In reviewing the ALJ's decision, we neither reweigh the evidence nor substitute our judgment for that of the agency" (quotations and citation omitted)).  The Court finds, therefore, that notwithstanding plaintiff's objections the ALJ provided sufficient support for his weighing of Dr. Bjork's opinion.  *Krauser*, 638 F.3d at 1331 ("[T]he ALJ's findings must be sufficiently specific to make clear to any subsequent reviewers the weight he gave to the treating source's medical opinion and the reason for that weight."  An ALJ need not expressly discuss the application of each factor to each medical opinion, so long as the ALJ's opinion is "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."  *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (internal citations omitted).  The ALJ found that Dr. Bjork's opinion was unsupported, pointed to specific evidence that contradicted the opinion, and declined to assign it controlling weight.  This is sufficient.  *See Mays v. Colvin*, 739 F.3d 569, 575 (10th Cir. 2014) ("Because we can tell from the decision that the ALJ declined to give controlling weight to Dr. Chorley's opinion, we will not reverse on this ground.");  *see also Watkins*, 350 F.3d at 1300.  The ALJ also made findings as to the relevant 20 C.F.R. § 404.1527(c) factors, namely, the opinion's supportability and its consistency with the record as a whole.  R. at 19; *see also* 20 C.F.R. §§ 404.1527(c)(3)–(4); *Oldham*, 509 F.3d at 1258.

The Court's analysis is similar with regard to the ALJ's treatment of Dr. Adams's

opinions. Dr. Adams provided a medical source statement and opined, among other things, that plaintiff would need to lie down four hours of an eight-hour workday, would have variable and unpredictable fatigue lasting 12 hours or more per day, and could not function at a job while fatigued. R. at 539–46. The ALJ afforded Dr. Adams's opinion minimal weight because, the ALJ noted, Dr. Adams only met plaintiff once before this opinion and did not provide any evidence that he had any experience rendering such opinions under social security regulations or listings. R. at 650. Additionally, aside from plaintiff's subjective allegations, the bases for Dr. Adams's opinions are not reflected his or his associates' records. R. at 651. The ALJ also noted that Dr. Adams's opinions and restrictive limitations are not supported by the record evidence. R. at 651–52.

      Plaintiff objects to the ALJ's determination with respect to Dr. Adams. Docket No. 14 at 25–27. Again, however, the Court cannot re-weigh the evidence or determine credibility. The Court's review is limited to determining whether the ALJ provided sufficient bases for rendering his decision. *See Oldham*, 509 F.3d at 1258; *Mays*, 739 F.3d at 575; *Watkins*, 350 F.3d at 1300. The Court finds that the ALJ adequately explained why he assigned Dr. Adams's opinions such weight and the ALJ's determination is supported by substantial evidence. Moreover, when a treating physician's opinion is contradicted by record evidence, it is reasonable for the ALJ to assign such an opinion less weight. *See also Pisciotta v. Astrue*, 500 F.3d 1074, 1078–79 (10th Cir. 2007) (ALJ reasonably discounted a treating physician's opinion which was inconsistent with other evidence); *see also Vigil v. Colvin*, 805 F.3d 1199, 1202 (10th Cir. 2015) ("The ALJ's finding that Dr. Summerlin's restrictions on standing and walking were inconsistent with his own examination findings is a good reason for

giving that medical opinion only moderate weight."); *Newbold v. Colvin*, 718 F.3d 1257, 1266 (10th Cir. 2013) (affirming the ALJ's decision discounting the treating physician's opinion where the doctor's treatment note from the same day was inconsistent with the doctor's opinion).

The Court concludes that the ALJ adequately explained the weight given to Dr. Bjork and Dr. Adams. The ALJ considered the relevant factors discussed in *Langley* and gave "good reasons for the weight assigned to a treating physician's opinion, that are sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reason for that weight." *Langley*, 373 F.3d at 1119 (internal quotation marks and alterations omitted).

### *2. Statements of Friends and Family*

The ALJ also evaluated the statements of plaintiff's friends and family as lay opinions under 20 C.F.R. § 404.1527(f). R. at 652. The ALJ gave these opinions very little weight because they were not medical source opinions; they provided no specific functional limitations beyond some difficulties with ladders, walking, and being around power tools, which are addressed in the RFC; they "regurgitate" plaintiff's subjective allegations; they are inconsistent with the record evidence; and none of the statements was made under oath. R. at 653. Plaintiff argues that the opinions are valid sources of information under POMS DI 24580.015(B) and that the opinions do not simply "regurgitate" plaintiff's subjective allegations but rather provide an additional functional limitation of needing to take frequent breaks. Docket No. 14 at 28.

"[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as

19

significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996). The ALJ did so by summarizing plaintiff's friends' and family's statements and explaining why he discounted it. R. at 652–54. Plaintiff provides no authority besides POMS DI 24580.015(B). Docket No. 14 at 28. However, the ALJ's determination does not contradict that regulation. The regulation states that generally individuals living with the claimant should be good sources of information, but the regulation does not say that this is always the case or that the ALJ cannot weigh these witnesses' credibility. While the ALJ did not specifically go through each of these witnesses' claims, as he did for plaintiff, "any error in failing to do so is harmless because 'the same evidence that the ALJ referred to in discrediting [the claimant's] claims also discredits [the lay witness's] claims." *Best-Willie v. Colvin*, 514 F. App'x 728, 736 (10th Cir. 2013) (unpublished) (quoting *Buckner v. Astrue*, 646 F.3d 549, 560 (8th Cir. 2011)). The Court thus concludes that the ALJ's treatment of the lay witnesses' testimony was supported by substantial evidence.

## V. CONCLUSION

For these reasons, it is

**ORDERED** that the decision of the Commissioner that plaintiff is not disabled is **AFFIRMED**. It is further

**ORDERED** that this case is closed.

DATED March 31, 2021.

                                        BY THE COURT:

                                        PHILIP A. BRIMMER
                                        Chief United States District Judge